UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERNEST GIBSON,

    Plaintiff,

-vs-                                    Case No. 07-CV-00864

AMERICAN CYANAMID COMPANY,
ET AL.,

    Defendants.

AMENDED COMPLAINT

Now comes the above-named Plaintiff, by his attorneys, for a cause of action against the above-named defendants, and alleges and shows to the Court as follows:

**I.    PARTIES**

1. Ernest Gibson is a minor and resident of the State of Wisconsin, residing at 2639 North 45th Street, Milwaukee, Wisconsin.

2. Susan M. Gramling is guardian ad litem for Ernest Gibson and is a resident of the State of Wisconsin.

3. Department of Health and Family Services, State of Wisconsin, has made certain payments on behalf of the Plaintiff, with respect to medical, hospital and/or disability expenses which were incurred by the Plaintiff as a result of the unlawful acts alleged herein. Said defendant is joined as a party for the purpose of complying with the provisions of § 803.03 Wis. Stats.

4. American Cyanamid Company ("American Cyanamid") is being sued in its own capacity and is a Maine corporation with its principal place of business in New Jersey.

1

5. <u>Armstrong Containers, Inc.</u> ("Armstrong") is being sued in its capacity as the successor-in-interest to the John R. MacGregor Co. and the MacGregor Lead Company, and is a Delaware corporation with its principal place of business in Georgia.

6. <u>ConAgra Foods, Inc.</u> ("ConAgra"), the successor-in-interest to WP Fuller and Fuller-O'Brien, is a Delaware corporation with its principal place of business in Nebraska.

7. <u>E.I. DuPont DeNemours & Company</u> ("DuPont") is a Delaware corporation with its principal place of business in Delaware.

8. <u>Millennium Holdings, LLC</u> ("Millennium"), the successor-in-interest to Glidden Paints, is a Delaware corporation with its principal place of business in Texas.

9. <u>NL Industries, Inc.</u> ("NL Industries") formerly known as the National Lead Company, is a New Jersey corporation with its principal place of business in Texas.

10. <u>The Atlantic Richfield Company</u> ("ARCO"), the successor-in-interest to International Smelting and Refining Company, Anaconda Lead Products Company, Anaconda Sales Company, Anaconda Copper Mining Company, and International Lead Refining Company, is a Delaware corporation with its principal place of business in California.

11. <u>The Sherwin-Williams Company</u> ("Sherwin-Williams") is an Ohio corporation with its principal place of business in Ohio.

12. At all pertinent times, American Cyanamid, Armstrong, ConAgra, DuPont, Millennium, NL Industries, ARCO, and Sherwin Williams, (hereafter referred to collectively as "Industry Defendants") together with their agents, servants, employees, alter egos, and predecessor corporations, designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold white lead carbonate products used as a pigment in

2

Case 2:07-cv-00864-LA    Filed 03/07/08    Page 2 of 12    Document 50

paints and coatings for residential use in the State during the relevant time period.

13. 2905 Wisconsin LLC, as third party defendant, currently owns, maintains, supervises and has control of the property located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin, which was constructed prior to 1978.

## II. FACTS

14. On or about January, 1997, Ernest Gibson's family entered into a residential rental agreement for the rental of property located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

15. During the period that the Plaintiff resided at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin, the surfaces at the residence were coated with paint containing a white lead carbonate that was designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants thereby causing the Plaintiff to be exposed to and ingest said white lead carbonate.

16. The white lead carbonate designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants was and is an inherently defective and unreasonably dangerous product.

17. Specifically, the white lead carbonate designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants is hazardous because exposure of children to white lead carbonate causes severe and permanent injuries, including, but not limited to learning disabilities, decrements in intelligence, and deficits in a wide range of neuropsychological functioning, including visual motor skills, fine motor skills, verbal skills, attention and concentration, memory, comprehension and

3

impulse control. It can also cause coma, seizure and death.

18. The Industry Defendants designed the white lead carbonate so as to allow them to distinguish between different grades at the point of sale and promoted the various grades for different purposes despite the fact that all of the white lead carbonate designed, manufactured, processed, marketed, promoted, supplied, distributed and/or sold for use in paint by the Industry Defendants was functionally interchangeable, physically indistinguishable and identically defective.

19. The Plaintiff is unable to identify the specific manufacturer, supplier and/or distributor of the white lead carbonate present in the residence in which he was exposed. The Plaintiff's inability to identify the manufacturer, supplier and/or distributor of the white lead carbonate was not and is not the fault of the Plaintiff.

20. The white lead carbonate designed, manufactured, promoted, and sold by the Industry Defendants was in a condition not contemplated by the ultimate consumer and was dangerous to an extent beyond that which was contemplated by the ordinary consumer.

21. In 1971, after decades of medical research had unambiguously implicated white lead carbonates as the major contributing force in childhood lead poisoning, and at a time when the majority of paint and pigment manufacturers had ceased production of white lead carbonate, American Cyanamid entered the white lead carbonate market.

22. Although the use of all leaded pigments was banned in the United States in 1978, white lead carbonate is still present in and on many homes, schools, hospitals and other public and private buildings throughout the State, including the premises located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

23. Industry Defendants knew and/or should have known since at least the early 1900's that

white lead carbonate is hazardous to human health, and in particular to children. For example, in an 1881 booklet entitled "Paints and Painting," Sherwin-Williams wrote:

*"While it is true that carbonate of lead possesses some of the best elements of paint, it is also true that in other respects it is defective."*

In another example, in its employee newsletter for the month of January 1900, Sherwin-Williams published the following statement:

*"It is also familiarly known that white lead is a deadly cumulative poison, while zinc is innocuous. It is true, therefore, that any paint is poisonous in proportion to the percentage of lead contained in it."*

In an additional example, in its employee newsletter for the month of May, 1915, Sherwin-Williams published the following statement:

*"White lead . . . has some fatal defects, chief of which is the tendency to 'chalk' off after exposure for a year or two."*

24. The Industry Defendants also knew and/or should have known that there existed, at all relevant times, safer alternatives to the use of white lead carbonate as a pigment for residential paints and coatings.

25. Despite their knowledge that white lead carbonate, when used as designed and as intended, was hazardous to human health, the Industry Defendants continued to design, manufacture, process, market, promote, supply, distribute and/or sell white lead carbonates, failed to warn of the hazardous nature of white lead carbonate, and failed to adequately test white lead carbonates.

26. The Industry Defendants also contributed to the creation of a risk of harm to children when it failed to disclose the hazardous nature of white lead carbonate and instead

5

marketed and represented its products containing white lead carbonate as safe.

27. Specifically, the Industry Defendants engaged in promotional campaigns that failed to disclose the dangers of using and exposing children to paint and coatings products containing white lead carbonates. Further, the Industry Defendants marketed paints and coatings containing white lead carbonate as a product that fostered health and well-being and that could be used safely on interior and exterior surfaces where the presence of children was likely.

28. Despite the knowledge of the Industry Defendants regarding the hazards of white lead carbonate when used as a pigment in residential paint, each failed to disclose the dangers of using and exposing children to white lead carbonate and each thereby knowingly contributed to the creation of the risk of harm to the Plaintiff.

29. Instead, for decades the Industry Defendants marketed white lead carbonate as a safe product that fostered health and well-being and promoted white lead carbonate as a pigment for use in areas inhabited by children.

30. The Industry Defendants also contributed to the creation of the risk of harm to the Plaintiffs through participation in trade associations such as the Lead Industries Association ("LIA") and the National Paint, Varnish, & Lacquer Association (NPVLA), and said activity included, *inter alia*, marketing white lead carbonate as a pigment in paint through misleading advertisements and promotions.

31. The LIA is not a party because it is presently under the protection of bankruptcy laws in the United States. From at least 1928 through the events material to allegations of this complaint, the LIA was the agent, servant, employee, alter ego, aider and abettor of one or more of the Industry Defendants and acted individually and/or within the scope of its

6

agency, servitude, employment in promoting and marketing white lead carbonate products used as a pigment in paints and coatings for residential use in the State of Wisconsin during the relevant time period.

32. Through the LIA and NPVLA, each of the Industry Defendants also sought to suppress all unfavorable information and publicity about white lead carbonate without regard for the truth of such information and despite its own contrary knowledge about the severe hazards posed by white lead carbonate when used as a pigment in paint. As a result of the intentional, negligent and other wrongful conduct of the Industry Defendants in designing, manufacturing, processing, marketing, promoting, supplying, distributing and/or selling white lead carbonate, said hazardous product is present in and on the residence located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

33. Beginning on or about June, 1999 the Plaintiff sustained lead poisoning by ingesting white lead carbonate derived from intact accessible painted surfaces, paint chips, paint flakes and dust that were derived from paints and coatings in and on the residence located at the premises located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

34. On or about July 22, 1999, the City of Milwaukee Health Department notified the owner of 2904 West Wisconsin that an inspection of the residence disclosed the following:

    a.    the presence of intact accessible painted and coated surfaces containing white lead carbonates;

    b.    loose, peeling, flaking, or chipped paint, interiorly and exteriorly, which contained a hazardous concentration of white lead carbonates;

    c.    that the aforementioned conditions tended to cause white lead poisoning;

    d.    the aforementioned conditions were a violation of the Milwaukee Code of Ordinances, including but not limited to §66-20, 66-22, and 66-29.

35. The lead hazards referred to in the preceding paragraph, which constituted violations of the Milwaukee Code of Ordinances, posed a health hazard to the Plaintiff and in fact poisoned the Plaintiff by causing catastrophic and toxic levels of lead in his blood stream.

36. At all relevant times, the conduct of each Defendant was malicious and in reckless and/or intentional disregard for the rights of the Plaintiff.

37. As a direct and proximate result of these and other wrongful actions by each Defendant, the Plaintiff has suffered severe and permanent injuries, including, but not limited to, great pain of body and mind and significant neurological deficits, past and future hospital and medical expenses, and impairment of the Plaintiff's ability to live and enjoy life, all in an unspecified amount pursuant to Wisconsin Statutes.

38. As to third party Defendant 2905 Wisconsin LLC, Plaintiffs allege that 2905 Wisconsin LLC is the current owner of the property at 2904 West Wisconsin Street, Milwaukee, Wisconsin. Plaintiffs and Defendants need access to said property for the purpose of inspection for the presence of lead pigment in the above-captioned matter. Access is appropriate according to Wis. Stat. §804.09.

III.    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Strict Liability**
**(Industry Defendants)**

39. The Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs of this complaint.

8

40. The Industry Defendants have at all times material to this action been engaged in the business of designing, manufacturing, promoting, selling, distributing, and/or supplying of white lead carbonate which was used in the painting, staining, construction of, and the maintenance and remodeling of the residence located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

41. The white lead carbonate that the Plaintiff was exposed to was in substantially the same condition as it was before leaving the control of the Industry Defendants.

42. At the time that the white lead carbonate left the possession and control of the Industry Defendants, it was a defective and unreasonably dangerous product because, when used in the manner in which it was intended to be used and/or for the purpose that it was reasonably foreseeable it may have been used, it caused substantial and severe injuries to the Plaintiff.

43. The defective condition of the white lead carbonate designed, manufactured, marketed, promoted, supplied, distributed and/or sold by Industry Defendants was a factor that substantially contributed to the Plaintiff's injuries.

## SECOND CAUSE OF ACTION
### Negligence
### (Industry Defendants)

44. The Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs of this complaint.

45. The Industry Defendants knew or should have known that white lead carbonate when used as a pigment in residential paints and coatings was harmful to children coming into contact with it.

46. Despite the knowledge that white lead carbonate posed an unreasonable risk to the health and welfare of children exposed thereto, the Industry Defendants continued to design, manufacture, promote, sell, distribute, and/or supply white lead carbonate which was used in and on the residences located at 2904 West Wisconsin Avenue, Milwaukee, Wisconsin.

47. At all times material hereto, the Industry Defendants were under an obligation of due care to refrain from any act which would cause foreseeable harm to others.

48. At all times material, the Industry Defendants were under a continuing duty to warn about the hazards of their white lead carbonate products.

49. The Industry Defendants also owed a heightened duty of care because their conduct directly impacted the health and welfare of children.

50. The Industry Defendants breached their duties by engaging in conduct that posed an unreasonable risk of harm, including, among other things:

 a. selling white lead carbonate without warning the general public, including but not limited to, consumers, ultimate users, retailers, wholesalers, third party paint manufacturers, and other intermediaries, of the dangerous characteristics thereof;

 b. continuing to fail to adequately warn the general public of the dangerous characteristics of white lead carbonate following the sale of its product through the present time;

 c. failing to adequately test white lead carbonate for use in residential paints and coatings; and/or

    d.    continuing to design, manufacture, promote, sell, distribute, and/or supply white lead carbonate for use in residential paints and coatings when they knew, or in the exercise of ordinary care, should have known that white lead carbonate was harmful to children and other persons coming into contact with it.

51. The negligence of the Industry Defendants was a factor that substantially contributed to the Plaintiff's injuries.

WHEREBY Plaintiffs proceed for the purpose of conducting an entry upon the land against third party Defendant 2905 Wisconsin LLC, Plaintiffs seek a grant of entry upon land in accordance with the attached notice.

WHEREFORE the Plaintiff demands judgment against each Defendant, jointly and severally, as follows:

1. For the Plaintiff, Ernest Gibson, in an unspecified amount pursuant to Wisconsin Statutes, including but not limited to compensatory and punitive damages;

2. For pre-judgment and post-judgment interest, together with the costs, disbursements of this action;

3. For any other remedy the court deems just and equitable under the circumstances.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

                                          **MOTLEY RICE LLC**

Dated: March 6, 2008

                                          s/ Jonathan D. Orent
                                          Jonathan D. Orent - Bar No.: 1062035
                                          Attorney for Ernest Gibson
                                          Motley Rice LLC

321 South Main Street  
Providence, Rhode Island 02940  
Telephone: (401) 457-7700  
Fax: (401) 457-7708  
jorent@motleyrice.com

Case 2:07-cv-00864-LA   Filed 03/07/08   Page 12 of 12   Document 50