UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ERNEST GIBSON, Minor, by his**
**guardian ad litem, SUSAN M. GRAMLING,**

          Plaintiff,

          **Case No. 07-C-864**

    -vs-

**AMERICAN CYANAMID Co.,**
**ARMSTRONG CONTAINERS, Inc.,**
**E.I. Du PONT de NEMOURS and Co.,**
**MILLENIUM HOLDINGS LLC,**
**NL INDUSTRIES, Inc.,**
**ATLANTIC RICHFIELD Co.,**
**THE SHERWIN WILLIAMS Co., and**
**MILWAUKEE COUNTY DEPARTMENT OF**
**HEALTH AND SERVICES,**

          Defendants.

## DECISION AND ORDER

On June 15, the Court granted summary judgment for one of the defendants, Atlantic Richfield Company ("ARCO"). The Court held that the imposition of liability under the "risk contribution" rule adopted by the Wisconsin Supreme Court in *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523 (Wis. 2005) would violate ARCO's substantive due process rights. ARCO moves for entry of judgment. Fed. R. Civ. P. 54(b).

Instead of responding to the motion for entry of judgment, the plaintiff, Ernest Gibson, moved for reconsideration. Gibson also filed a renewed motion to consolidate this case with Case Nos. 07-C-303, 07-C-441, 07-C-865, and 10-C-75 before Judge Adelman. Previously,

this Court deferred ruling on ARCO's motion for summary judgment until Judge Adelman decided the plaintiffs' initial motion to consolidate, a motion he denied without prejudice. Civil L.R. 42(a) (E.D. Wis.) (motion to consolidate decided by the judge to whom the lowest case number is assigned). The circumstances now are obviously quite different. The Court issued a dispositive ruling in favor of one of the defendants, and matters are proceeding through discovery and towards dispositive motions and trial both here and in the cases before Judge Adelman. The Court sees no reason why it should wait until Judge Adelman resolves the newly-filed motion to consolidate before deciding the pending motions in this case.

Rule 54(b) provides that when an action "presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." When deciding such a motion, the function of the district court is to act as a "'dispatcher' . . . to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Rule 54(b) judgments are generally disfavored because they allow piecemeal appellate litigation. *Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518 (7th Cir. 1999). "Courts may not accommodate attorneys just because they want to appeal immediately; a separate judgment under Rule 54(b) multiplies the costs of litigation for opposing parties and for the appellate court, and these interests deserve thoughtful consideration." *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir. 1990).

-2-

The district court has the power to enter a Rule 54(b) judgment if there is a final adjudication on a specific claim or with respect to a specific party. *Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996). Here, the Court's summary judgment ruling is a final adjudication of all of ARCO's rights and liabilities in this case. Fed. R. Civ. P. 54(b) ("court may direct entry of a final judgment as to one or more, but fewer than all, claims *or parties*") (emphasis added); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 580 (1st Cir. 1994) ("ruling underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally").

Once that initial determination is made, the Court can allow an appeal to proceed if it determines that there is no just reason for delay. In making this inquiry, the Court must consider whether the claims to be appealed are "separate from the others remaining to be adjudicated" and whether "the nature of the claims already determined" are such that "no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8. The Court should also consider "the equities involved," *Id.*, but certification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal. *McAdams v. McCord*, 533 F.3d 924, 928 (8th Cir. 2008). It is the moving party's burden to demonstrate that it will "suffer unjust harm from the normal delay pending resolution of all claims in the case." *Wright v. Kosciusko Med. Clinic, Inc.*, 791 F. Supp. 1327, 1334 (N.D. Ind. 1992). As a general matter, "judicial administrative interests" are given priority over

equitable concerns. *Curtiss-Wright* at 10 ("the court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units"); 10 JAMES WM. MOORE ET AL., MOORE'S FED. PRACTICE ¶ 54.23[1][a] (3d ed. 2010).

The remaining defendants in this case recently stated that they "believe that they are also entitled to summary judgment under the constitutional principles recognized by Judge Randa's decision, and intend to file motions for that relief promptly." D. 117, Defendants' Opposition to Plaintiffs' Renewed Motion to Partially Consolidate.[1] One of those defendants, Sherwin-Williams, moved for summary judgment on June 26, arguing that it is entitled to judgment for "the same reasons that this Court granted defendant Atlantic Richfield Company's motion for summary judgment, and because the risk contribution theory also violates Sherwin-Williams' right to procedural due process, effects an unconstitutional taking of Sherwin-Williams' property, and discriminates against interstate commerce . . ." Therefore, the issues remaining for adjudication are the same as or closely related to those that would be appealed if the Court entered judgment for ARCO now, separate from the remaining defendants. Courts should not enter judgment under such circumstances. *Cf. Gerardi v. Pelullo*, 16 F.3d 1363, 1372 (3d Cir. 1994) (courts "should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts underlying the claim resulting in that judgment may be intertwined with the remaining

---

[1] One of the defendants, Millenium Holdings, did not join in this statement, but they are not participating in this case because they are in Chapter 11. D. 75, ARCO's Summary Judgment Brief at 37.

-4-

issues"); *Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987) (overruled on other grounds) ("In the multiple party situation where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants").

ARCO argues that the Court should enter judgment as soon as possible because a final judgment would likely be appealed and, if affirmed, dispositive to the claims in the risk contribution cases currently pending before Judge Adelman. Even assuming that the administrative interests regarding piecemeal appeals are not controlling here, ARCO fails to meet its burden of demonstrating that it will suffer undue prejudice if it has to wait for final judgment until the conclusion of this case. ARCO's hope for a favorable Seventh Circuit ruling is not enough to justify the premature entry of judgment. *Cf. Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 46 (1st Cir. 1988) ("To entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might* expedite a particular appellant's case would defoliate Rule 54(b)'s protective copse. This would leave the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expenses. The path, we think, should not be so unobstructed") (emphasis added).

Of course, ARCO's wait for a final judgment is complicated by the plaintiffs' continuing efforts to consolidate this case with the cases pending before Judge Adelman. If Judge Adelman consolidates before judgment is entered, he would be under no obligation to

follow this Court's ruling, except pursuant to the law of the case. *HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (law of the case doctrine has greater force when there is a change of judges during the litigation). While it is not for this Court to decide, plaintiffs' attempt to consolidate four months after Judge Adelman denied consolidation, and only fifteen days after an unfavorable dispositive ruling, seems like a transparent judge-shopping strategy. If pre-trial consolidation was inappropriate in March, when ARCO's identical motion for summary judgment was fully briefed in all of these cases, it is hard to understand why pre-trial consolidation would be appropriate just a few months later. Moreover, without pre-judging the merits of the pending and forthcoming dispositive motions, the logic of this Court's ruling should apply with equal force to all of the defendants. Accordingly, it is extremely unlikely that consolidation will occur prior to the entry of final judgment in this case. Even if pre-judgment consolidation was a likely scenario, the Court cannot enter judgment prematurely just to avoid the possible consequences when the inevitable result would be duplicate appellate effort.

Finally, Gibson moves for reconsideration of the Court's summary judgment ruling based on an intervening change in controlling law.[2] Gibson argues that *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, — U.S. —, 130 S. Ct. 2592 (2010), decided two days after the Court granted ARCO's motion for summary judgment, mandates reconsideration. In *Stop the Beach*, the Supreme Court held that a decision issued by the

---

[2] Gibson's motion can be considered under Rule 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

-6-

Florida Supreme Court was not an unconstitutional taking. The plurality in *Stop the Beach* held that the Takings Clause applies to the judiciary. *Stop the Beach* at 2601 ("It would be absurd to allow a State to do by judicial decree what the Takings Clause forbids it to do by legislative fiat"). Concurring in the judgment, Justice Kennedy (joined by Justice Sotomayor) agreed that there was no unconstitutional taking, but found that it was unnecessary to adopt a "judicial takings" doctrine. Instead, Justice Kennedy, much like his concurring opinion in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), reasoned that such a case should be analyzed under the Due Process Clause. *Stop the Beach* at 2615 (Kennedy, J., concurring) (Court "would be on strong footing in ruling that a judicial decision that eliminates or substantially changes established property rights, which are a legitimate expectation of the owner, is 'arbitrary or irrational' under the Due Process Clause"). Therefore, *Stop the Beach* actually supports the Court's conclusion that the judicial development of the common law, just like a legislative enactment, can violate the constitution.

Gibson's argument under *Stop the Beach* focuses on the concurring opinion of Justice Breyer. Justice Breyer refused to join the plurality opinion for fear it would "invite a host of federal takings claims without the mature consideration of potential procedural or substantive legal principles that might limit federal interference in matters that are primarily the subject of state law." *Id.* at 2618-19 (Breyer, J., concurring). Justice Breyer criticized the plurality for finding it "'irrelevant' that the 'particular state actor' that takes private property (or unconstitutionally re-defines state property law) is the judicial branch, rather

than the executive or legislative branch." *Id.* at 2618. "Hence, the approach the plurality would take today threatens to open the federal court doors to constitutional review of many, perhaps large numbers of, state-law cases in an area of law familiar to state, but not federal, judges." *Id.* at 2619.

From Justice Breyer's reasoning in *Stop the Beach* (joined by Justice Ginsburg), Gibson extrapolates that those two justices cannot be counted in favor of the rule "conjured" by the Court from *Eastern Enterprises* because of their expressed reluctance to "interfere" with matters of state law developed by the judiciary. Remember that in *Eastern Enterprises*, Justice Breyer and Justice Ginsburg were among the four justices who dissented from the outcome *and* the rationale that retroactive liability under the Coal Act violated the Takings Clause. The only significance of the dissenting opinions in *Eastern Enterprises* was that retroactive liability should be analyzed under the Due Process Clause, not the Takings Clause. *Gibson v. Am. Cyanamid Co.*, — F. Supp. 2d —, 2010 WL 2465498, at *13 (E.D. Wis. June 15, 2010) ("a case involving the imposition of retroactive liability should not be analyzed as a taking because of the five to four alignment of the justices in *Eastern* [*Enterprises*]. The obvious corollary is that five of the justices perceived the problem of retroactive liability as a substantive due process issue") (internal citations omitted). Justice Breyer's reasoning in *Stop the Beach* does not undermine this conclusion. Nor does it undermine *Eastern Enterprises* or the separate authorities which demonstrate that retroactive liability pursuant to the judicial development of the common law is unconstitutional.

-8-

Gibson also argues that the Court should reconsider in light of a subsequent decision issued by the Wisconsin Supreme Court. *Society Ins. v. LIRC*, — N.W.2d —, 2010 WL 2680522 (Wis. July 8, 2010). A state court decision is not controlling in this context. *See 520 South Michigan Ave. Assoc. v. Shannon*, 549 F.3d 1119, 1124 (7th Cir. 2008) (federal court owes no deference to state court's interpretation of the federal constitution).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. ARCO's motion for judgment [D. 112] is **DENIED**; and

2. Gibson's motion for reconsideration [D. 121] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of August, 2010.

                                            **SO ORDERED,**

                                            *s/ Rudolph T. Randa*
                                            **HON. RUDOLPH T. RANDA**
                                            **U.S. District Judge**